UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-92

| | |
|---|---|
| AEROLOGISTICS INVESTMENT PARTNERS, LLC; RIVER HAWK AVIATION, INC.; and PROFILE AVIATION CENTER, INC. **Plaintiffs**, v. CESSNA AIRCRAFT COMPANY, **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Aerologistics Investment Partners, LLC's ("Aerologistics") Motion to Dismiss the counterclaim against it (Doc. #10) filed July 11, 2011. Responsive pleadings have been filed and this matter is now ripe for disposition.

## I. BACKGROUND

On June 17, 2010 Plaintiffs filed the instant civil action against Defendant Cessna Aircraft alleging, *inter alia*, breach of contract and negligent bailment. Defendant properly removed the action to this court pursuant to 28 U.S.C. § 1441. Subject matter jurisdiction is proper pursuant to diversity jurisdiction. 28 U.S.C. § 1332. On May 19, 2011, Plaintiffs River Hawk Aviation, Inc. and Profile Aviation Center, Inc. (collectively "Bankruptcy Plaintiffs") filed for bankruptcy protection in the United States Bankruptcy Court for the Western District of

North Carolina.[1] On July 8, 2011, all three Plaintiffs filed a notice of voluntary dismissal of the complaint without prejudice. (Doc. #9). On July 11, 2011, Plaintiff Aerologistics filed a Motion to Dismiss Defendant's Counterclaim, seeking dismissal of Defendant's breach of contract counterclaim (Doc. #10). On July 20, 2011, Defendant Cessna voluntarily dismissed without prejudice its counterclaim against River Hawk and Profile (Doc. #12). Defendant's counterclaim against Aerologistics, however, remains viable. Though styled as a motion to dismiss, the substance of Aerologistics' motion seeks to extend the automatic stay provided for by 11 U.S.C. § 362 to the Defendant's counterclaim against Aerologistics. Accordingly, this Court will treat Aerologistics' motion as a motion to extend the automatic stay provided for by 11 U.S.C. § 362.

This case began with the Complaint filed by Plaintiffs, Aerologistics Investments Partners, LCC ("Aerologistics"), River Hawk Aviation, Inc. ("River Hawk"), and Profile Aviation Center, Inc. ("Profile Aviation") (collectively "Plaintiffs") on June 17, 2010, asserting four claims for relief against Defendant Cessna Aircraft Company ("Cessna").[2] Aerologistics is the titled and registered owner of a Cessna 550 fixed wing multi-engine aircraft (hereafter "Aircraft"). Compl. ¶ 1. Pursuant to an agreement with Aerologistics, River Hawk is responsible for maintaining and operating the aircraft. *Id.* at ¶ 11. Pursuant to an agreement with Aerologistics and River Hawk, Profile Aviation is responsible for the maintenance of the Aircraft. *Id.* at ¶ 12. Defendant Cessna designs, manufactures and sells aircrafts as well as owns and operates a number of regional service centers in the United States, including the Service

---

[1] Although Cessna was a creditor of River Hawk and Profile, it did not receive notice of the bankruptcy filing and was unaware of it until after it filed a Counterclaim against all three Plaintiffs on June 20, 2011.

[2] All facts are presented in the light most favorable to Defendant Cessna, the party opposing the Motion to Dismiss.

Center in Greensboro. *Id.* at ¶ 8. Cessna advertises the Service Center as a Federal Aviation Administration ("FAA") certified Part 145 Repair Station, meaning that it has been approved by the FAA to perform maintenance, preventive maintenance, or alterations to aircraft and to return such aircraft to service after the maintenance or alterations have been performed. *Id.* at ¶ 10.

After the nose gear of Plaintiffs' aircraft was damaged on the runway at Hickory Regional Airport in August 2008, Plaintiffs investigated various alternatives for repairing the damage. *Id.* at ¶ 14. Plaintiffs engaged in communications with Cessna and informed Cessna that time was of the essence for having the Aircraft repaired and returned to an airworthy condition. *Id.* Based in part on Cessna's representations and warranties that it could quickly and efficiently make the necessary repairs, Plaintiffs chose Cessna to repair the Aircraft at its Service Center in Greensboro. *Id.* at ¶ 15. Profile Aviation and Cessna entered into an agreement for repair of the Aircraft. The agreement specified that Cessna would take possession of the Aircraft at the Hickory Regional Airport, remove the Aircraft's wings, and transport it over the highway to the Service Center in Greensboro where Cessna would then make the necessary repairs. *Id.* The service order prepared by Cessna indicated that the Aircraft would be repaired by November 20, 2008. *Id.* at ¶ 16.

Plaintiffs allege that while removing the wings and transporting the plane, Cessna's employees and/or agents negligently handled the Aircraft, causing additional damage beyond that which was sustained during the collapse of the nose gear. *Id.* at ¶18. Additionally, despite Plaintiffs' multiple reiterations of the time-sensitive nature of the repairs, Cessna did not return the aircraft to the Plaintiffs until March 2009. *Id.* at ¶ 19. Plaintiffs allege that as a result of Cessna's negligent handling of the aircraft, and its delayed and incomplete repair of the aircraft,

Plaintiffs suffered significant lost revenue that otherwise would have been earned by chartering the Aircraft. *Id.* at ¶ 21.

In addition, Plaintiffs allege that a number of repairs Cessna made to the Aircraft constitute "major repairs," but Cessna failed to designate them as such, failed to have them properly engineered, inspected, and approved, and failed to supply Plaintiffs with proper documentation following the repairs, certifying the Aircraft as "airworthy," in violation of the Federal Aviation Regulations ("FARs"). *Id.* at ¶ 20. Plaintiffs claim this exposed them to liability for operating an aircraft that does not meet FAA requirements. *Id.* at ¶ 21. Defendant Cessna's Counterclaim alleges that it performed $59,215.75 of service and maintenance on the Aircraft, contractually obligating Plaintiffs, including Aerologistics, to pay Cessna $59,215.75 for its service and repair of the Aircraft. Countercl. ¶¶ 6-7.

## II. LEGAL STANDARD

A district court retains jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to an automatic stay. See Picco v. Global Marine Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990) ("[D]istrict courts retain jurisdiction to determine the applicability of the stay to litigation pending before them . . .."). As a general rule, the stay imposed under 11 U.S.C. § 362, applies only to bar proceedings against the debtor, and does not apply to actions against non-debtor third parties or co-defendants of the debtor. See Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 126-27 (4th Cir. 1983). An exception exists, however, in "unusual circumstances." It is appropriate to extend the automatic stay provided for in 11 U.S.C. §362 when the interests of a non-debtor party are so "intimately intertwined" with those of a Debtor that the Debtor is the real party in interest. In re Midway Airlines Corp., 283 B.R. 846, 851-52 (E.D.N.C. 2002). Claims against a non-debtor are so intimately intertwined

4

when there is a suit against a non-debtor who is entitled to absolute indemnity frm the debtor for any judgment entered. A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). Put another way, the non-debtor defendant must have such an identity with the debtor that suing the non-debtor is the functional equivalent of suing the debtor. Id. In Robins, the Fourth Circuit extended a stay where the judgment against the defendant would in essence be a judgment against property of the bankruptcy estate. Id. at 1001-02 (staying actions against the products liability insurer of the manufacturer of the Dalkon Shield).

### III. DISCUSSION

Plaintiff Aerologistics argues that "the automatic stay provided for by 11 U.S.C. § 362 should be extended to the Defendant's Counterclaim against Aerologistics because the claims against Aerologistics are so intimately intertwined with those of the Bankruptcy Plaintiffs, that the Bankruptcy Plaintiffs are the real parties in interest." (Doc. # 11, 2).

Cessna argues that because Aerologistics has not sought bankruptcy protection, the automatic stay has no application to Cessna's counterclaim against Aerologistics. Cessna argues that the pleadings before the Court do not establish that Aerologistics is entitled to absolute indemnity from River Hawk or Profile in relation to the $59,215.75 Cessna seeks in its counterclaim. This Court agrees. Simply put, the unusual circumstances that must exist in order to warrant extension of a stay to a non-debtor do not exist in this case. Should the counterclaim be allowed to proceed against Aerologistics, it is not clear from the pleadings that Aerologistics will be entitled to absolute indemnity from the bankruptcy plaintiffs. See also Holland v. High Power Energy, 248 B.R. 53 (S.D. W. Va. 2000) (declining to extend the bankruptcy stay even though non-debtor defendant *may* be entitled to indemnification from bankruptcy defendant in the event it is found liable) (emphasis added). Should Cessna ultimately prevail on its

5

counterclaim against Aerologistics, it would not necessarily be a judgment against the bankruptcy estate. Robins, 788 F.2d at 1001-02. Moreover, other circuits have recognized that Robins created a very limited exception. See Okla. Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 141 (10th Cir. 1994) (stating that Robins created a "narrow exception" to the general rule that the stay does not extend to solvent codefendants and rejecting the argument that a suit against the president of a debtor company should have been stayed where the plaintiff's claims against the president were separate and independent from the claims asserted against the debtor company). Accordingly, this Court will decline to extend the bankruptcy stay to Aerologistics and Plaintiff Aerologistics' Motion to Dismiss the Counterclaim is DENIED.

### IV. CONCLUSION

Plaintiff Aerologistics fails to plead the "unusual circumstances" necessary to warrant extension of the automatic stay pursuant to 11 U.S.C. § 362. Therefore, the Court will not extend the stay to the counterclaim against Plaintiff Aerologistics, nor will it dismiss Defendant's counterclaim against Aerologistics on the current record. **THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss (Doc. # 10) is **DENIED** without prejudice.

Signed: August 8, 2011

Richard L. Voorhees
United States District Judge